JOHNSON, ET AL., RESPONDENTS, *v.* ELLIOT, ET AL., APPELLANTS.

No. 8934
Submitted February 1, 1950. Decided May 9, 1950.
Rehearing Denied June 7, 1950.
218 Pac. (2d) 703

598

Mr. Edmond G. Toomey, Helena, and Mr. G. J. Jeffries, Roundup, for appellants. Both argued orally.

Mr. Ralph J. Anderson and Mr. Albert C. Angstman, both of Helena, Mr. W. W. Mercer and Mr. W. S. Mather, both of Roundup, for respondents. Mr. Anderson argued orally.

MR. JUSTICE METCALF:

This is an action to compel specific performance of an alleged contract for the sale of real property.

For some time prior to May 29, 1947, W. B. Elliot, as president of the Willow Creek Sheep Company, had been negotiating with W. B. Johnson and H. N. Ekern, the plaintiffs, for the sale of the lands of the corporation. On May 18, 1947, the plaintiffs told W. B. Elliot that they would buy the corporation's ranch but that they also wanted the lands of the defendants Robert A. Elliot, Stella C. Elliot and A. F. Elliot. On May 29, 1947, W. B. Elliot discussed the sale of their private lands with the defendants and the three defendants gave Walter B. Elliot a power of attorney, identified as exhibit 1, as follows:

"Whereas, the Willow Creek Sheep Company, a Corporation, is about to sell its lands, and,

"Whereas, it is the desire of the purchaser of the lands of the said Willow Creek Sheep Company, a Corporation, to purchase the hereinafter described lands belonging to the undersigned, Robert Elliot, Bessie Elliot, and A. F. Elliot,

"Now, Therefore, in consideration of the premises, the said undersigned do hereby make, execute and appoint, and by these presents have made, executed and appointed W. B. Elliot their true and lawful attorney for them and in their names and stead to sell the said hereinafter described lands for the sum of Five Dollars ($5.00) per acre with a five percent (5%) commission for the sale of the said lands in case the lands belonging to the said Willow Creek Sheep Company are sold, as above mentioned; and in case the sale is made, they, and each of them, hereby promise and agree to furnish merchantable title to said premises and to convey the same to the purchaser thereof by a good and sufficient warranty deed, free and clear of all encumbrances.

"The lands hereinabove mentioned are described as follows, to-wit: (Description omitted.)

"In Witness Whereof we have hereunto set our hands and seals this 29th day of May, A. D., 1947.

"Robert A. Elliot
"Bessie Elliot
"A. F. Elliot."

On the evening of May 29, 1947, W. B. Elliot went to Billings to meet with the plaintiffs. An agreement for the sale of the Willow Creek Sheep Company's land was entered into. It is summarized as follows: On May 29, 1947, the Willow Creek Sheep Company agreed to sell and W. B. Johnson and H. N. Ekern agreed to buy some 30,000 acres of deeded land, together with grazing permits and personal property other than livestock. The land was not particularly described but the agreement was to sell "all the lands and premises to which the Seller has title" etc. The consideration was to be $5.00 per acre. Within thirty days the Willow Creek Sheep Company agreed to furnish a detailed list of all the lands involved in the transaction together with a description of the personal property and upon furnishing such list and description "thereupon a formal contract for the sale of said property shall be made and entered into between the parties hereto."

The formal contract was also to provide for the furnishing of an abstract, merchantable title, disposition of growing crops, etc. The seller agreed to execute proper deeds to the purchasers and deposit them in the Security Trust & Savings Bank of Billings, Montana, and in turn, the purchasers agreed to deposit the sum of $15,000 to be held by the bank until the execution and delivery of the more complete contract. The agreement further provided that "if within the time specified in paragraph III hereof the seller shall fail, neglect or refuse to do and perform the things by it to be done, the said bank shall return the said sum of $15,000 to the purchasers, whereupon the said bank and each of the parties hereto shall be released and discharged of and from all further liability hereunder, and this contract shall be deemed null and void."

The last clause in the agreement required the seller to take all statutory steps required by R. C. M. 1947, sections 15-901 to 15-910 for the approval of the sale by the stockholders of the selling corporation to the purchasers. The agreement was signed for the Willow Creek Sheep Company by W. B. Elliot, presi-

dent, and attested by Harriet C. Elliot, director. This contract was introduced into evidence and identified as exhibit A.

Immediately after the signatures to exhibit A, the following appeared:

"We, the undersigned, hereby consent to the sale by Willow Creek Sheep Co. of the lands described in the Power of Attorney [Exhibit 1, supra] hereunto attached, and agree to all of the terms of the foregoing contract, and when final contract is prepared that we will execute the same.

Dated May 29, 1947.

"Robert Elliot

"Bessie Elliot

"A. F. Elliott

"By W. B. Elliot

"Their Attorney-in-Fact."

The plaintiffs gave to W. B. Elliot a check for $15,000 which was cashed and deposited in the Billings bank to the credit of the Willow Creek Sheep Company. In the early part of July, W. B. Elliot asked for and obtained from the plaintiffs an additional $10,000 which was also deposited to the credit of the Willow Creek Sheep Company in the Billings bank. The plaintiffs took possession of part of the Willow Creek Sheep Company's ranch on July 10, 1947, and the balance of the ranch on July 20, 1947. On July 19th a formal contract was entered into. The contract, identified as exhibit 3, contained a detailed description of the lands of the Willow Creek Sheep Company and of the land of the defendants in the instant case. In other respects it was like the memorandum identified as exhibit A. In the meantime defendants, Robert Elliot and A. F. Elliot, by an instrument dated and acknowledged July 8, 1947, revoked the power of attorney, exhibit 1, given to W. B. Elliot. On July 16, 1947, a letter was addressed to W. B. Elliot by registered mail notifying him of the revocation. On July 21, 1947, W. B. Elliot signed an official receipt for the registered letter. The revocation was filed for record in the office of the clerk and recorder of Musselshell

county on July 16, 1947. A similar revocation was signed and acknowledged on July 12, 1947, and recorded on July 16, 1947, from Bessie Elliot. Notice of Bessie Elliot's revocation was mailed to W. B. Elliot by registered mail on July 16, 1947, and the official receipt therefor was likewise signed by W. B. Elliot on July 21, 1947. It was not until August 23, 1948, that the stockholders of the Willow Creek Sheep Company complied with the statutory procedure for the sale of the entire property of the corporation as required by R. C. M. 1947, sections 15-901 to 15-910.

The complaint alleged: That the defendants were the owners of the described land and that such land bordered upon the land of the Willow Creek Sheep Company and together with the corporate land comprised an integral agricultural unit; that the defendants on May 29, 1947, promised and agreed to sell their land for a consideration of $5.00 per acre together with a five percent. commission and on May 29, 1947, the plaintiffs accepted the offer of the defendants.

Then follow allegations setting forth the particular value of the defendants' land as a part of the agricultural unit with the lands of the Willow Creek Sheep Company, the readiness of the plaintiffs to perform the contract and their offer to do equity and abide by the decree of the court.

The defendants moved to make the complaint more definite and certain, contending that "it does not appear from plaintiffs' said complaint whether said alleged contract was oral or in writing * * *." This motion was denied. The defendants also objected to the introduction of evidence because the complaint did not allege that this alleged contract for the sale of land was in writing. Error is assigned for overruling the motion and the objection.

The Statute of Frauds requires that an agreement for the sale of real property or an interest therein be evidenced by a note or memorandum thereof in writing, subscribed by the party to be charged or his agent. R. C. M. 1947, secs. 13-606, 93-1401-7, 74-203.

But "the rule is well settled that though a contract, to be valid under the statute (Civ. Code, sec. 2185, supra [now R. C. M. 1947, sec. 13-606]), must be evidenced by a writing and subscribed by the party to be charged or his agent, the fact that it is in writing is a matter of proof and not allegation in pleading * * *." Blankenship v. Decker, 34 Mont. 292, 298, 85 Pac. 1035, 1037, and cases therein cited.

The law will presume that the contract was in writing in the absence of any statement to the contrary. Mayger v. Cruse, 5 Mont. 485, 6 Pac. 333; Sweetland v. Barrett, 4 Mont. 217, 1 Pac. 745; Hefferlin v. Karlman, 29 Mont. 139, 150, 74 Pac. 201.

The defendants also filed a general demurrer. Their contention was that the complaint does not allege facts to show an offer from the defendants or the acceptance of the offer by the plaintiffs.

The allegation in the complaint is that "on May 29, 1947, the defendants * * * promised and agreed to sell all and singular the lands and real estate herein described * * *" and that "the plaintiffs accepted the offer and then and there promised and agreed to pay the purchase price aforesaid."

The plaintiffs' theory under which they seek to recover is stated in their brief as follows: "Before discussing the evidence it may be well to set forth our contentions. It is true that we rely upon the power of attorney from the appellants to Walter Elliot, Exhibit 1, as constituting in part an offer from appellants to respondents. In other words, on May 29th, in accordance with the terms of the power of attorney, W. B. Elliot offered to sell appellants' lands to respondents. But for the acceptance of that offer we do not rely on Exhibit 3 or Exhibit A or the filing of the complaint in this action, as appellants would lead the Court to believe. Rather the offer from appellants to respondents was accepted verbally by the respondents on May 29, 1947, the date that the power of attorney was executed. Thus was the contract between respondents and appellants consummated—the written

604

offer from appellants contained in their power of attorney. Exhibit 1, verbally accepted by respondents.''

To support that theory they have alleged that plaintiffs prom- ised and agreed to sell the lands described for the consideration set forth. To state a cause of action *ex contractu* the complaint must disclose a valid agreement, a right in the plaintiff and a breach by the defendant. A. H. Averill Machinery Co. v. Bains, 50 Mont. 512, 148 Pac. 334.

The complaint alleges that the defendants agreed to sell for a specified consideration and that the plaintiffs agreed to purchase. These allegations together with the other averments in the complaint constitute a sufficient pleading of a contract. R. C. M. 1947, sec. 13-101.

The trial court found that the contract was made on May 29, 1947; that on that date the defendants promised and agreed to sell the land for the stipulated purchase price and the plaintiffs accepted the offer of the defendants and agreed to buy it.

Sections 13-606, 93-1401-7, and 74-203, supra, require a mem- orandum in writing subscribed by the party to be charged. the memorandum must contain all the essentials of the contract but if the material elements are stated in general terms all the details or particulars need not be stated. Dineen v. Sullivan, 123 Mont. 195, 213 Pac. (2d) 241.

The written power of attorney is signed by the defendants who are the parties to be charged. The ''party to be charged'' means the party to be charged in the particular suit. Eccles v. Kendrick, 80 Mont. 120, 259 Pac. 609; 2 Williston on Contracts (Rev. Ed.), pp. 1687, 1688, sec. 586; R. C. M. 1947, sec. 17-805; Restatement Contracts, sec. 211.

The plaintiff who had not signed the contract supplied the necessary mutuality of obligation by the institution of the action on the contract. Hogan v. Thrasher, 72 Mont. 318, 233 Pac. 607.

The power of attorney does not specify the time within which the purchase price was to be paid. For that reason the

defendants object that the contract was too uncertain for specific performance. But if time of payment is not specified the law implies that payment will be made within a reasonable time or upon demand. R. C. M. 1947, sec. 13-720; Hart v. Barron, 122 Mont. 350, 204 Pac. (2d) 797. In Dineen v. Sullivan, supra, the memorandum was held to be indefinite and uncertain because the memorandum itself showed on its face that the purchase price was payable in instalments and was therefore incomplete. But where no time of payment is fixed the law implies a reasonable time and that has been held to be sufficiently certain for specific performance. 49 Am. Jur., Specific Performance, sec. 32, p. 45; Restatement Contracts, sec. 207c (comment 12).

The power of attorney does not name the defendant. While it is not necessary that the memorandum be signed by both parties it is necessary that all the parties to a contract be named. Restatement Contracts, sec. 207a; 2 Williston on Contracts (Rev. Ed.), sec. 569, p. 1622. But the memorandum may consist of several writings. Restatement Contracts, sec. 208; Gantt v. Harper, 86 Mont. 69, 281 Pac. 915; Johnson v. Ogle, 120 Mont. 176, 181 Pac. (2d) 789.

Taking together the power of attorney and the agreement executed the same day between the Willow Creek Sheep Company and the plaintiffs which referred to the power of attorney and was signed by the defendants' authorized agent, the names of the contracting parties are supplied. Gantt v. Harper, supra.

The plaintiffs contend, however, that even if there is a contract, the only penalty is the provision of exhibit A that in the event of a breach the ''bank shall return the said sum of $15,000 to the Purchasers whereupon the said bank and each of the parties hereto shall be released and discharged of and from all further liability hereunder and this contract shall be deemed to be null and void.'' However that provision was a part of the separate agreement entered into between the Willow Creek Sheep Company and the plaintiffs and has no application to the contract between the plaintiffs and these defendants.

There remains the question as to whether the lands of the Willow Creek Sheep Company are sold. The defendants agreed to sell their land "in case the lands belonging to the said Willow Creek Sheep Company are sold."

That the corporate land was sold is evidenced by exhibit 3 and exhibit A. It is immaterial that the ratification and confirmation of the sale was not made until after this action was commenced. The objections that might have been made to the contract between the plaintiffs and the Willow Creek Sheep Company were in fact not made. The plaintiffs are in possession of that land. Before trial the sale was confirmed. Defendants Bessie Elliot and A. F. Elliot yielded possession of the corporation lands to the plaintiffs on July 19, 1947. Robert Elliot, the other defendant, was not a stockholder of the Willow Creek Sheep Company and is not in a position to object to the sale of the lands of that corporation. 18 C. J. S., Corporations, sec. 515, page 1199. Both exhibit 3 and exhibit A were executed by the president of the corporation duly authorized to act for it.

The revocation of the power of attorney was ineffectual. Even if it was revoked it has no effect on this contract. The court found that the contract was entered into on May 29, 1947. Under the theory of the plaintiffs' case and the findings of the court the revocation of the power of attorney was too late.

The decree is affirmed.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES ANGSTMAN, FREEBOURN AND BOTTOMLY, concur.

Rehearing denied June 7, 1950.