No. 87-487

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

FRED WALTERS and JUDY WALTERS,

        Plaintiffs and Appellants,

-vs-

WILLIAM R. GETTER and KATHERINE M.
GETTER,

        Defendants and Respondents.

APPEAL FROM: District Court of the Ninth Judicial District,
In and for the County of Glacier,
The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Lawrence A. Anderson, Great Falls, Montana
        Robert J. Yunck, Cut Bank, Montana

    For Respondent:

        Doris M. Poppler, Billings, Montana
        John R. Davidson, Billings, Montana

Submitted on Briefs: April 7, 1988

Decided: June 2, 1988

Filed: JUN 2 1988

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This action arose from a real estate transaction. Plaintiffs Walters sought rescission of the contract or in the alternative damages for breach by defendants Getter, the sellers. The Getters counterclaimed for payment of the balance due under the contract. Both parties moved for summary judgment, which motions were denied. The trial court allowed the matter to go before the jury on the issue of whether the Getters performed under the contract within a reasonable time. The jury returned a verdict for defendants. The Walters then moved for judgment notwithstanding the verdict or for a new trial. The court denied both motions, and the Walters appeal. We affirm. Two questions are presented for review:

1. Did the District Court err when it denied plaintiffs' motion for summary judgment?

2. Were plaintiffs entitled to a new trial?

William Getter owned a number of lots near Cut Bank, Montana. These lots lay to the east of town along Highway 2. Further to the east, Phillips Petroleum Company (Phillips) had built a shop. Phillips wanted water and sewer lines constructed along the highway and connected to the city's existing lines. Phillips contacted Mr. Getter and two other individuals who owned property between the city and the Phillips property to see if they would share the cost of extending the services to that area. Mr. Getter and one of the other property owners eventually agreed to cover a proportionate share of the cost. Mr. Getter's share was anticipated to be approximately 35% of the total estimated cost of $46,816. The completion date was expected to be December 15, 1981.

Fred Walters agreed to buy three of Mr. Getter's lots along Highway 2 so he could relocate his business there. Mr. Walters owned a service company which cements oil wells for oil producers in the area. His contract work for Phillips constituted about 40% of his income at the time. He was aware of the cost-share agreement between Mr. Getter and Phillips, and he wanted to avoid any possibility of problems arising between himself and Phillips. To protect himself from such contingency, he had the following clause included in the agreement to buy and sell which both he and Mr. Getter signed:

> The purchase price includes a water, sewer and gas line to the three lots with any fees or charges due to Phillips Petroleum Company paid in full by the Seller. It is understood that the lines are in the process of being run through the lots at this time and the Sellers agree to see that the construction of the lines does get completed and is paid for so that the Purchasers have those lines fully paid for and intact at the time of closing. Future maintenance and utility charges are the responsibility of the Purchasers.

Mr. Walters also agreed to pay $5,000 down and $85,000 upon closing. On the day scheduled for closing, January 15, 1982, the lines were not completed, and Mr. Getter had not paid Phillips. Mr. Getter demanded payment of the $85,000 from Mr. Walters who refused because Mr. Getter had not paid Phillips. The parties agreed that Mr. Getter would receive $65,000 and that Mr. Walters would retain $20,000 until the lines were completed. Both parties believed the construction would be completed within a short time.

In fact, the project was not completed until the spring of 1982, and Mr. Getter was not assessed for his share of the cost until October 1982. Phillips assessed him for $61,528, well over the earlier estimate. Mr. Getter contested the assessment and, when negotiations broke down, eventually

3

filed a suit against Phillips. Mr. Walters contacted Mr. Getter several times during 1982 and 1983 regarding Mr. Getter's refusal to pay the Phillips assessment.

Later in 1983 or early 1984, Mr. Walters again questioned Mr. Getter concerning payment of the assessment and was advised to go ahead and hook up to the water and sewer lines. However, Phillips would not allow him to hook up until the assessment was paid. About this time, Mr. Getter tendered the deed to Mr. Walters, but because the lines still were not paid for, Mr. Walters would not accept the deed.

On February 7, 1984, the Walters' attorney sent a letter to the Getters informing them that unless they were ready, willing, and able to perform all conditions of the contract and close the sale within 7 days of receipt of the letter, the Walters would consider them in default. Several letters were exchanged, but the Getters did not perform within the 7 days. The Walters declared the sellers to be in default on March 1. They rescinded the contract and demanded repayment of $70,000 plus interest. The Getters denied default and refused to return the money. They were in the midst of settlement negotiations with Phillips, and on March 22, 1984, Mr. Getter signed a settlement agreement with Phillips and paid for the lines. Thus, the Getters paid for the lines 42 days after receipt of the Walters' February 7 demand.

I

Did the District Court err when it denied plaintiffs' motion for summary judgment?

The lower court, in its order denying summary judgment to both parties, made the following conclusion:

> Plaintiffs have never waived the contractual requirement that the utility lines be installed and paid for before they were obligated to pay full consideration and accept a deed to the premise. The parties, by their conduct, mutually agreed to

4

> extend the date of performance of a condition precedent by Getters (install the utilities and pay for the same). No certain date of performance was set, but the evidence clearly shows that at the time of the extension, the expectation of closing the deal was in the very near future.
>
> Roughly two (2) years expired before Plaintiffs' attorney wrote a letter to Defendants demanding performance of the contract within seven (7) days after Defendants received the letter (February 16, 1984). Section 28-3-601, M.C.A. provides, "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. . ." Section 28-3-206, M.C.A. provides that uncertainty in a contract should be interpreted most strongly against the party who caused the uncertainty to exist. Time of performance was uncertain due to litigation between Defendants and Phillips. Where no time of performance of a contract is fixed, the law implies a reasonable time for performance or performance on demand. Johnson v. Elliot, 123 Mont. 597.

The court went on to conclude that what constituted a reasonable time to perform was a question of fact.

The Walters' argument is that they were entitled to set the 7 day deadline for the Getters' performance, and, when the Getters failed to perform within that time, they had the right to rescind the contract. In other words, they contend that 7 days notice, as a matter of law, was reasonable in this case.

The parties originally intended to close the sale on January 15, 1982. When that day passed and the contract was not fully performed, the parties, as concluded by the District Court, agreed to extend the date of performance. The parties did not specify a date upon which the Getters must perform, and the Walters did not demand performance at any time prior to February 7, 1984.

As the District Court noted, "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed." Section 28-3-601, MCA.

5

Plaintiffs argue that 7 days was reasonable as a matter of law. In Henderson v. Daniels (1922), 62 Mont. 363, 373-74, 205 P. 964, 967, this Court discussed what constituted reasonable time:

> "Reasonable time" is defined to be so much time as is necessary, under the circumstances, to do conveniently what the contract or duty requires should be done in a particular case.

The Court then added,

> When the facts are clearly established or are admitted or undisputed, the question of what is a reasonable time is one of law.

Henderson, 205 P. at 967. In Dunjo Land Co. v. Hested Stores Co. of Wyoming (1973), 163 Mont. 87, 90, 515 P.2d 961, 962-63, the Court clarified the law in this area:

> The question of whether a given length of time is reasonable can be either a question of fact or a question of law. When the surrounding circumstances are clearly established or undisputed the question is solely one of law for resolution by the court. Henderson, supra. On the other hand, when the surrounding circumstances are in dispute the question is at least partially one of fact and requires resolution by the trier of fact.

The District Court here concluded that "[w]hat is a reasonable time to perform is a question of fact." If this were a material fact and genuine issue between the parties, then summary judgment would not have been appropriate under Rule 56(c), M.R.Civ.P. The record at trial demonstrates that there were a number of facts and circumstances which were not clearly established at the time of the summary judgment ruling.

At the time of summary judgment, the affidavits and other information available to the court did not establish whether it would have been reasonable for the Getters to pay

6

for the pipeline improvements within the 7 day period demanded by the Walters or whether it was reasonable for the Getters to have taken 42 days in which to make such payment. In addition, there were factual issues as to whether the conduct of the Getters was reasonable during the 2 year period after the entry of the contract. That determination of course required proof as to the nature and extent of their actions during that period. The record at the time of summary judgment did not demonstrate whether it was reasonable for the Getters to proceed as they did without proposing any other resolution to the Walters' concerns. The record did not indicate whether the Getters had acted reasonably in seeking to settle the dispute. We conclude that the facts surrounding the transaction with regard to the question of reasonableness had not been clearly established at the time of summary judgment. As a result, there were factual questions for the trier of fact to determine. Dunjo Land Co., 515 P.2d at 963.

Plaintiffs contended that the demand was reasonable as a matter of law because Johnson v. Elliot (1950), 123 Mont. 597, 218 P.2d 703, allows for performance within a reasonable time or performance on demand. However, when demand is made, the other party still must be given reasonable time after demand in which to perform. We hold that the trial court properly denied summary judgment.

II

Were plaintiffs entitled to a new trial?

The Walters filed a motion in limine to exclude evidence of the dispute between the Getters and Phillips. The trial court denied the motion and allowed evidence and testimony concerning the dispute. After trial, the Walters moved for a new trial, and the court denied that motion.

The Walters contend that the evidence was irrelevant because "unexpected hardships do not excuse a party's performance." However, the Getters did not claim that their dispute with Phillips excused their performance. The question at trial was whether the Getters performed within a reasonable time. As indicated in our discussion of Issue I, a determination of whether the Getters performed within a reasonable time requires a consideration of the facts underlying the dispute. We conclude that the evidence regarding the dispute was relevant to the question of reasonableness.

Further, the trial court gave the jury instruction no. 18 which read as follows:

> If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly (for example, if it consists of the payment of money only), it must be performed immediately upon the thing to be done being exactly ascertained.

This is an exact quote from § 28-3-601, MCA. The court then gave instruction no. 19:

> The word "ascertain" means to make sure or certain; to establish; to determine and to settle. In a legal sense it means "to find out or to learn for certain; to make sure by investigation. It requires a determination of the actual amount of an indebtedness.

We conclude that the facts surrounding the transaction were relevant to a determination by the jury of the issue of reasonable time of performance.

The Walters also argue that the evidence was insufficient to justify the verdict. If there is substantial evidence to justify the verdict, we will not disturb the jury's determination. Kukuchka v. Ziemet (Mont. 1985), 710 P.2d 1361, 1363, 42 St.Rep. 1916, 1917-18. The evidence will be

8

viewed in the light most favorable to the party prevailing at trial. Kukuchka, 710 P.2d at 1363.

Although the Getters received an assessment for their share of the costs for the pipe lines, they quickly disputed the assessment. It appears from the record that they were seriously negotiating a settlement with Phillips when the Walters made their demand for performance. Within 30 days they accepted an offer of settlement from Phillips. Within 42 days they paid for the lines. Under the circumstances we cannot say that this was an unreasonable time for performance. Error exists only when probative facts are completely absent from the record. Kukuchka, 710 P.2d 1363.

We conclude that sufficient evidence exists in the record to support the verdict. We hold that the District Court did not err by denying plaintiffs a new trial.

Finally, the Walters argue that the trial court should have granted a judgment notwithstanding the verdict. A judgment notwithstanding the verdict will be granted only when the evidence presents no room whatever for honest difference of opinion over the factual issue in controversy. Jacques v. Montana National Guard (1982), 199 Mont. 493, 505, 649 P.2d 1319, 1325. We hold that this test is not met in the present case.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9