DA 13-0329

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 15

SHEILA CHIPMAN, individually and on
behalf of all others similarly situated,
DEBORAH WALLEN, individually and on
behalf of all others similarly situated, and
ELLEN HAMES, individually and on behalf
of all others similarly situated,

        Plaintiffs and Appellants,

    v.

NORTHWEST HEALTHCARE CORPORATION,
APPLIED HEALTH SERVICES, INC.; BRENDAN
HOUSE; KALISPELL REGIONAL MEDICAL
CENTER, INC., THE SUMMIT AND NORTHWEST
ORTHOPEDICS & SPORTS MEDICINE, L.L.C.,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-08-976B
Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            Amy Eddy, David Sandler, Eddy Sandler Trial Attorneys, PLLP;
            Kalispell, Montana

        For Appellees:

            Robert C. Lukes, Charles E. Hansberry; Garlington, Lohn & Robinson,
            PLLP; Missoula, Montana

            Richard M. Kobdish; Attorney at Law; Dallas, Texas

                    Submitted on Briefs:  October 30, 2013
                              Decided:  January 21, 2014

Filed:

                         _____
                                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Sheila Chipman, Deborah Wallen, and Ellen Hames (Plaintiffs) appeal the order of the Eleventh Judicial District Court, Flathead County, granting Defendants' (Employers) motion for summary judgment. We consider on appeal whether the District Court erred in the following determinations:

¶2 *1. That Employers' policies did not constitute a standardized group employment contract;*

¶3 *2. That the CIB Pay-Out Benefit was not deferred compensation or wages under the Montana Wage and Wage Protection Act.*

¶4 *3. That the covenant of good faith and fair dealing does not apply to Plaintiffs' claims.*

¶5 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6 The named plaintiffs are employees of Kalispell Regional Medical Center (KRMC), a subsidiary of Northwest Healthcare Corporation. Upon hire, new employees sign a probationary employment contract that reads, "Upon expiration of this Probationary Employment Contract, if the Employer and Employee elect to continue the employment relationship, the Employee shall attain regular employee status, subject to the policies and regulations of the Employer, as they may exist from time to time." Plaintiffs did not sign any additional employment contract when they completed their probationary period.

¶7 In the 1990s, Employers created a sick-leave policy as part of its benefits package that allowed employees to "bank" their sick leave in what Employers termed a continued

2

illness bank (CIB). The CIB was established to provide employees "with a source of compensation during long term illnesses and extended periods of time off from work due to personal injury, illness or an approved [family medical leave]." Only Employees who had been employed continuously for six months could begin to accrue CIB hours. Employees could accumulate up to 866 CIB hours for use at any time during their employment; upon termination of employment, employees lost any unused sick leave. Employers revised the terms of the CIB in 2002; the modified plan allowed the capped amount of unused CIB hours to be paid out to departing employees "who have completed a minimum of twenty-five years of service." KRMC adopted the policy (hereinafter referred to as the CIB Pay-Out Benefit) on March 31, 2002, after holding meetings to explain the new policy.

¶8 Employers' policy and procedure manual contains an additional policy describing different categories of employment status. The policy expressly states that for those employees eligible for benefits, "[t]hese benefits may change from time to time . . . ." The policies and procedures contained in the manual were summarized and communicated to Employees through a handbook. The Foreword to Employers' handbook also stated that "the procedures, practices, policies and benefits described here may be modified, added to, or discontinued from time to time." Employees signed a receipt for each edition of the handbook, which stated:

> I understand that this Handbook states Northwest Healthcare's policies and practices in effect on the date of publication. I understand that nothing contained in the Handbook may be construed as creating a promise of future benefits or a binding contract with Northwest Healthcare for benefits or for any other purpose. I also understand that these policies and

3

procedures are continually evaluated and may be amended, modified or terminated at any time.

¶9 In 2008, KRMC met with new external auditors and determined that accounting for the possible financial liability of the CIB Pay-Out Benefit for all employees would jeopardize its ability to expand operations and possibly endanger its credit rating for tax-exempt bond issuances. Due to these concerns, Employers terminated the Pay-Out Benefit as of July 1, 2008. Only employees who already had reached twenty-five years of employment with Employers at that time are now entitled to their earned but unused CIB hours upon termination; Plaintiffs represent employees who had not reached twenty-five years of service before the benefit ended.

¶10 Following termination of the policy allowing a contingent CIB Pay-Out Benefit, Plaintiffs brought a class action complaint against Employers. They alleged breach of their employment contract, breach of the covenant of good faith and fair dealing, and violation of the Montana Wages and Wage Protection Act. In an earlier appeal, we affirmed the District Court's certification of the class of employees. *Chipman v. N.W. Healthcare Corp.*, 2012 MT 242, 366 Mont. 450, 288 P.3d 193. Plaintiffs moved for partial summary judgment on April 30, 2012. Employers responded and filed a cross-motion for summary judgment on June 13, 2012. After hearing arguments, the District Court granted Employers' motion for summary judgment on April 24, 2013. Plaintiffs now appeal that order.

4

## STANDARD OF REVIEW

¶11 We review a district court's grant of summary judgment de novo, using the same criteria applied by the district court under M. R. Civ. P. 56. *Draggin' Y Cattle Co. v. Addink*, 2013 MT 319, ¶ 16, 372 Mont. 334, 312 P.3d 451. Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c).

¶12 "The existence of a contract is a question of law." *Murphy v. Home Depot*, 2012 MT 23, ¶ 6, 364 Mont. 27, 270 P.3d 72. Statutory interpretations also present questions of law. *State v. Madsen*, 2013 MT 281, ¶ 8, 372 Mont. 102, __ P.3d __. The parties agree that there are no genuine issues of material fact and that the issues before us are solely questions of law. We review a district court's conclusions on such questions for correctness. *Murphy*, ¶ 6.

## DISCUSSION

¶13 *1. Whether the District Court erred in its determination that Employers' policies did not constitute a standardized group employment contract.*

¶14 Plaintiffs first contend that Employers' institution of the CIB Pay-Out Benefit created a binding agreement under which Employers promised to compensate Plaintiffs for their earned and unused CIB hours if Plaintiffs stayed with Employers for twenty-five years. Plaintiffs assert that the employer manual constituted a standardized group employment contract with employees and governed the relationship. Plaintiffs admit, however, that the only statutory authority for group employment contracts in Montana

5

relates to collective bargaining for public employees. *See* § 39-31-101, MCA, et seq. There is no statutory or case law in Montana supporting blanket group employment contracts. Thus, our analysis of whether the manual is a contract is governed by general principles of Montana contract law.

¶15   Plaintiffs must establish four elements to prove the existence of a contract: "(1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." Section 28-2-102, MCA. The consent of the parties must be "communicated by each to the other." Section 28-2-301(3), MCA. Mutual consent consists of an offer and an acceptance of that offer. *Daniels v. Thomas, Dean & Hoskins, Inc.*, 246 Mont. 125, 133, 804 P.2d 359, 363 (1990). To be considered an offer, the offeror must manifest a willingness to enter into a bargain. *Daniels*, 246 Mont. at 133, 804 P.2d at 364 (citing Restatement (Second) of Contracts § 24). "We determine whether the parties have mutually consented to a contract by inquiring whether a reasonable person, based upon the objective manifestation of assent, and all the surrounding circumstances, would conclude that the parties intended to be bound by the contract." *Bitterroot Int'l Sys. v. W. Star Trucks, Inc.*, 2007 MT 48, ¶ 33, 336 Mont. 145, 153 P.3d 627. Consent is not determined by the parties' subjective, undisclosed intent, but by their objective manifestations of consent, and properly may be determined by summary judgment. *Olsen v. Johnston*, 2013 MT 25, ¶¶ 11, 16, 22, 368 Mont. 347, 301 P.3d 791.

¶16   Manuals and handbooks outlining an employer's policies and procedures generally are not considered part of the employment contract. *Hubner v. Cutthroat Communs.,*

*Inc.*, 2003 MT 333, ¶ 18, 318 Mont. 421, 80 P.3d 1256. Because the handbook is a "unilateral statement of company policies and procedures, because its terms are not bargained for, and because no [mutual consent] occurred," we generally do not classify employee handbooks as binding agreements. *Kittelson v. Archie Cochrane Motors*, 248 Mont. 512, 518, 813 P.2d 424, 427 (1991) (citing *Gates v. Life of Mont. Ins. Co.*, 196 Mont. 178, 183, 638 P.2d 1063, 1066 (1982)). In *Gates*, we held that an employee handbook that contained a unilateral statement of company policies and procedures given to an employee two years after being hired was not a contract. *Gates*, 196 Mont. at 183, 638 P.2d at 1066.

¶17 As Plaintiffs point out, we determined in a previous case that an employer's policies and procedures did constitute terms of an employment contract where the required elements of contract formation were met. In *Langager v. Crazy Creek Prods., Inc.*, 1998 MT 44, ¶ 20, 287 Mont. 445, 954 P.2d 1169, we concluded that when there is both a sufficient bargained-for exchange and consideration, an employer handbook can become a binding agreement between employer and employee. Plaintiffs argue that because Employers received consideration for the Pay-Out Benefit by virtue of increased employee retention and reduced use of sick leave while the policy was in effect, they have met the *Langager* exception for adequate bargained-for exchange and consideration. Even if consideration has been shown, it is but one element for proof of a contract. Plaintiffs' contention cannot prevail in light of Employers' clearly expressed intention not to be contractually bound. *Langager* did not involve employer policies with express disclaimer language.

7

¶18    The policies at issue lack the required contractual element of mutual consent. The undisputed facts establish that Plaintiffs continually were informed, in both the policies and the handbook that communicated and explained those policies, that employee benefits could be altered or discontinued at any time. The foreword to the handbook provides that the benefits may be "modified, added to, or discontinued from time to time." In the benefits section of the handbook, Employers reserved the right to "amend, modify, or terminate, in whole or in part, any or all of the provisions of the benefit plans described herein . . . ." The policy defining which employees were entitled to benefits also stated clearly that benefits "may change from time to time." The only written contract of employment, the probationary employment contract, also alerts employees expressly that the policies and regulations of the employer "may exist" – or not – "from time to time." Further, Plaintiffs signed a receipt when given the employee handbook, expressly agreeing that they understood that the policies and procedures are continually evaluated and may be amended, modified or terminated at any time. Given these express disclaimers, the Employers' objective manifestations leave no doubt that they did not intend the statement of benefits to bind their future obligations, and employees could not reasonably rely on the benefits described in the handbook as existing indefinitely.

¶19    Plaintiffs attempt to persuade the Court that other jurisdictions have held similar employer policies and procedures to be standardized group employment contracts. Numerous courts have held, however, that the existence of disclaiming language in an employee handbook precludes the formation of a contract. Even jurisdictions cited by Plaintiffs recognize that if "[e]mployers . . . make known to their employees that

personnel policies are subject to unilateral changes by the employer," the employees "have no legitimate expectation that any particular policy will continue to remain in force." *Toussaint v. Blue Cross & Blue Shield*, 292 N.W.2d 880, 894-95 (Mich. 1980).

¶20 Many applicable cases address whether policy and procedure handbooks can contractually change an employee's "at-will" status, a consideration that does not exist in Montana employment law. *See Blehm v. St. John's Lutheran Hosp., Inc.*, 2010 MT 258, ¶ 21, 358 Mont. 300, 246 P.3d 1024. The decisions nonetheless apply general principles of contract law. *See Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1003 (Utah 1991) ("We also note that a number of jurisdictions have held that a clear and conspicuous disclaimer, as a matter of law, prevents employee manuals . . . from being considered as implied-in-fact contract terms."); *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 288 (Iowa 1995) ("We simply examine the language and context of the disclaimer to decide whether a reasonable employee, reading the disclaimer, would understand it to mean that the employer has not assented to be bound by the handbook's provisions."); *Davis v. Times Mirror Mags.*, 697 N.E.2d 380, 388 (Ill. App. 1998) (internal quotations omitted) ("To establish the existence of an employment contract using an employee handbook: First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made . . . [D]isclaiming language in an employee handbook precludes the formation of an employment contract."); *Bykonen v. United Hosp.*, 479 N.W.2d 140 (N.D. 1992) (same); *Habighurst v. Edlong Corp.*, 568 N.E.2d 226 (Ill. App. 1991) (same); *Karnes v. Drs. Hosp.*, 555 N.E.2d 280 (Ohio 1990) (same); *see also U.S. Airways, Inc. v. Barnett*, 535

9

U.S. 391, 410, 122 S. Ct. 1516, 1527 (2002) (O'Connor, J. concurring) (noting the concession that employees are not given legally enforceable rights when a personnel policy guide specifically states that it is "not intended to be a contract (express or implied) or otherwise to create legally enforceable obligations," and the employer "reserves the right to change any and all of the stated policies and procedures in the Guide at any time . . . .").

¶21 Policy considerations underlying Montana employment law recognize the need for flexibility in the employment relationship. *See Gates*, 196 Mont. at 184, 638 P.2d at 1067 ("an employer needs flexibility in the face of changing circumstances" (internal quotation marks omitted)); *Langager*, ¶ 25 ("an employer is free to set the terms and conditions of the work and of the compensation and the employee may accept or reject those conditions" (internal quotation marks omitted)). But the law binds employer and employee to the terms of employment policies while they are in effect. Montana law, for example, prevents an employer from terminating an employee in violation of the employer's own policies. Section 39-2-904(1)(c), MCA. *See Sullivan v. Cont'l Constr. of Mont., LLC*, 2013 MT 106, ¶¶ 43-46, 370 Mont. 8, 299 P.3d 832; *Kuszmaul v. Sterling Life Ins. Co.*, 2012 MT 154, ¶¶ 25-26, 365 Mont. 390, 282 P.3d 665. Employees are entitled to the protection of Employers' policies during the time that the policies are in effect. *See* § 39-2-904(1)(c), MCA; Arthur L. Corbin, *Corbin on Contracts* vol. 1, § 4.2 (Joseph M. Perillo ed., rev. ed., West 1993) ("Although an agreement is not a contract, it is not totally inoperative . . . a rendition of performance, before any notice of revocation, binds the other party to pay the specified compensation."); *In re Certified Question*, 443

N.W.2d 112, 119 (Mich. 1989) (quoting *Toussaint*, 292 N.W.2d at 895) ("Even though a . . . policy may be modified or revoked, while such a policy remains in effect, 'the employer may not treat its promise as illusory' by refusing to adhere to the policy's terms."). *See also Gaglidari v. Denny's Rests.*, 815 P.2d 1362, 1367 (Wash. 1991) (employer's unilateral change in policy is not effective until employees receive reasonable notice of the change). These cases demonstrate that the law does not prevent an employer from reserving the right to end a fringe benefit previously extended to its workers, so long as that benefit has not been made an express term of the employment contract, the employer provides the promised benefits while they are in effect, and the employer provides notice before the benefit is terminated.

¶22    The cases cited by the Dissent are not to the contrary. Dissent, ¶ 34. All but one involved allegations that the employer terminated the employee in violation of policies then in effect. *See Zaccardi v. Zale Corp.*, 856 F.2d 1473 (10th Cir. 1988); *Swanson v. Liquid Air Corp.*, 826 P.2d 664 (Wash. 1992); *Guz v. Bechtel Natl., Inc.*, 8 P.3d 1089 (Cal. 2000). The other points out that a handbook creates contractual rights only to benefits accrued before a policy change. *See Russell v. Bd. of Co. Comms.*, 952 P.2d 492, 502 n. 39 (Ok. 1997) (citing *Langdon v. Saga Corp.*, 569 P.2d 524, 527-28 (Ok. App. 1976) ("an employer's personnel manual providing for certain employee benefits (vacation and severance pay) created a contractual basis for a terminated employee's claim to those accrued benefits. The *policy statement* incorporated into the personnel manual was a contract defining the employment relationship during the period the policy was in effect.").

11

¶23 Given their express reservation of the right to end the benefit, the Employers' change in their policy to allow a CIB Pay-Out Benefit did not bind them to continue the benefit for all current employees in perpetuity. We conclude that Employers effectively disclaimed any intent to contract, and the element of mutual consent was not established. The District Court did not err in determining that the handbook was not a standardized group employment contract and that Employers therefore were permitted to terminate the CIB Pay-Out Benefit. In considering the next issue, we address whether the CIB Pay-Out Benefit already had accrued when the policy was terminated.

¶24 *2. Whether the District Court erred in its determination that the CIB Pay-Out Benefit was not deferred compensation or wages under the Montana Wage and Wage Protection Act.*

¶25 Plaintiffs next argue that the CIB Pay-Out Benefit constituted deferred compensation that vested at the time the Pay-Out Benefit was implemented. Plaintiffs concede that Employers may make unilateral policy changes, but argue that such changes may be applied prospectively only. Therefore, Plaintiffs reason, they have a right to be compensated for the CIB hours they earned prior to Employers' termination of the benefit. As discussed above, the CIB is a benefit created to supplement an employee's salary during an extended illness or injury. It is thus a safety net to sustain an employee's income until she can return to work or be eligible for disability benefits. Employees are required under the policy to use their short-term accrued sick leave before they may dip into their CIBs. An employee's CIB hours may not be transferred to other employees. CIB hours are carried over from year to year and—except for the twenty-five-year employees under the 2002 policy—are uncompensated. Employees claim that they

nonetheless accrued the benefit at the time the hours were banked. They reason that because the hours were accrued, they became wages earned, compensation for which was merely deferred until they reached twenty-five years of service.

¶26 Section 39-3-204(1), MCA, requires that an employer pay its employees "the wages earned by the employee . . . ." Section 39-3-201(6)(a), MCA, defines wages as "any money due an employee from the employer . . . ." The statute does not specifically include sick leave. "The obligation to pay wages only exists to the extent agreed upon between the employee and the employer." *Harrell v. Farmers Educ. Coop. Union of Am.*, 2013 MT 367, ¶ 40, 373 Mont. 92, ___ P.3d ___. We have made clear that "personal time, as a matter of law, does not automatically qualify as 'wages'" under § 39-3-201(6)(a), MCA. *McConkey v. Flathead Elec. Coop.*, 2005 MT 334, ¶ 22, 330 Mont. 48, 125 P.3d 1121. Only when an employer "has obligated itself to pay money for earned but unused personal time [does] there exist[] an obligation to pay wages . . . ." *McConkey*, ¶ 22. The right to earn compensation for personal time may be subject to reasonable restrictions and conditions precedent. *Langager*, ¶ 30; *McConkey*, ¶ 24. A condition precedent is a condition that "is to be performed before some right dependent thereon accrues or some act dependent thereon is performed." Section 28-1-403, MCA.

¶27 Whether Plaintiffs had earned the right to be compensated for their accumulated CIB hours prior to the Employers' discontinuance of the CIB Pay-Out Benefit is answered by the language of the policies. The portion of the handbook explaining the Pay-Out Benefit stated that "CIB benefits are not payable upon termination . . . with one exception; CIB hours will be paid out to employees who have completed a minimum of

twenty-five years of service." This exception imposes a condition precedent; before an employee is entitled to compensation for his or her unused CIB hours upon termination, the employee must have reached twenty-five years of service. Plaintiffs' CIB hours are not "earned, due, and owing" for any purpose other than paid time off of work for extended illness or injury. *McConkey*, ¶ 22. This condition is similar to one we found unobjectionable in *Langager*, which required employees to reach two years of service before earning the right to use paid vacation time. *Langager*, ¶ 28. What Plaintiffs had accrued prior to the change in policy was the number of hours in their continued illness banks. They retain those accumulated sick leave hours for appropriate use during their continued employment. We conclude that Plaintiffs' CIB hours did not constitute deferred compensation or earned wages and Employers did not divest any benefit the Plaintiffs already accrued. Because Plaintiffs did not reach the twenty-five year milestone prior to discontinuance of the CIB Pay-Out Benefit, they had not earned the right to be paid for whatever CIB hours remained by the time of their eventual termination from employment.

¶28    *3. Whether the District Court erred in its determination that the covenant of good faith and fair dealing does not apply to Plaintiffs' claims.*

¶29    Plaintiffs also contend that Employers breached the covenant of good faith and fair dealing by ending the CIB Pay-Out Benefit. After determining that there was no contract, the District Court did not address this issue. "[T]he implied covenant is a mutual promise that the contracting parties will not attempt, through dishonesty or abuse of discretion in performance, to deprive each other of *the benefits of the contract.*"

14

*Phelps v. Frampton*, 2007 MT 263, ¶ 38, 339 Mont. 330, 170 P.3d 474 (emphasis in original). We have made clear that the implied covenant of good faith and fair dealing does not attach in the absence of an enforceable agreement. *Phelps*, ¶ 33 (citing *GRB Farm v. Christman Ranch, Inc.*, 2005 MT 59, ¶ 15, 326 Mont. 236, 108 P.3d 507; *Cate v. First Bank*, 262 Mont. 427, 432-33, 865 P.2d 277, 279 (1993); *McNeil v. Currie*, 253 Mont. 9, 14, 830 P.2d 1241, 1244 (1992); *Beaverhead Bar Supply v. Harrington*, 247 Mont. 117, 124, 805 P.2d 560, 564 (1991)); *see also Story v. City of Bozeman*, 242 Mont. 436, 450, 791 P.2d 767, 775 (1990), *overruled in part on other grounds*, *Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 54, 318 Mont. 103, 79 P.3d 250.

¶30 We have determined that Employers' policies and procedures are not part of Plaintiffs' employment contract. Because the payout of CIB hours was not an accrued right or a term of an enforceable agreement, Employers' termination of the benefit could not breach the covenant. We conclude that the District Court did not err in determining that the covenant of good faith and fair dealing does not apply to Plaintiffs' claim.

## CONCLUSION

¶31 The District Court's order granting Employers' motion for summary judgment is affirmed.

/S/ BETH BAKER

We concur:

/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ LAURIE McKINNON

Justice Michael E Wheat dissents.

¶32   I dissent from the Court's holding that no contract exists regarding the CIB policy. A disclaimer in an employee handbook, standing alone, cannot support summary judgment dismissal of this contract claim. The District Court reads the handbook's disclaimer as proof that the Employers never meant to be bound by the benefits. But the conduct of a party may manifest assent even though it does not, in fact, intend to assent. Restatement 2d Contracts § 19(3) (1981). The question, as the majority states, is whether the Employers' outward manifestations could cause a reasonable person to conclude that they intended to be bound by the benefits.

¶33   Questions of reasonableness can be either questions of fact or questions of law. *Walters v. Getter*, 232 Mont. 196, 200, 755 P.2d 574, 577 (1988). When surrounding circumstances are in dispute, the question of reasonableness is at least partially one of fact and requires resolution by the trier of fact. *Walters*, 232 Mont. at 200, 755 P.2d at 577; *Steichen v. Talcott Properties, LLC*, 2013 MT 2, ¶¶ 17-19, 368 Mont. 169, 292 P.3d 458. Assent to contract occurs when a reasonable person could conclude, based on a party's outward manifestations, that the party intended to be bound by the contract. *Olsen v. Johnston*, 2013 MT 25, ¶ 11, 368 Mont. 347, 301 P.3d 791. The evaluation of assent to contract requires the consideration of all surrounding circumstances. *Bitterroot Int'l Sys v. Western Star Trucks, Inc.*, 2007 MT 48, ¶ 33, 336 Mont. 145, 153 P.3d 627.

¶34   Disclaimers in employer handbooks or policies do not automatically negate assent to contract; rather, they must be examined in the context of all circumstances, representations, and practices of the employer. *Zaccardi v. Zale Corp.*, 856 F.2d 1473,

16

1476-77 (10th Cir. 1988); *Russell v. Bo. of Co. Comms.*, 952 P.2d 492, 502 (Okla. 1997); *Guz v. Bechtel National, Inc.*, 8 P.3d 1089, 1103-04 (Cal. 2000); *Swanson v. Liquid Air Corp.*, 826 P.2d 664, 676 (Wash. 1992) (quotations and citations omitted) ("[e]ven if a disclaimer appears in the same handbook as the relied upon policy, summary judgment may be inappropriate . . . . The disclaimer must be read by reference to the parties' norms of conduct and expectations founded upon them."). In essence, a disclaimer is only one relevant fact in the dispute over whether a reasonable person could conclude that a party assented to contract. A factual issue arises if the disclaimer is present in one manual but is absent in a later, more detailed expression of employer policy. *Swanson*, 826 P.2d at 676. A disclaimed handbook may still give rise to a contract when the handbook is only considered a "guide" for employer-employee relations. *Zaccardi*, 856 F.2d at 1477. Disclaimer validity is also questionable when the disclaimed policy was instituted in the face of labor unrest. *Swanson*, 826 P.2d at 676.

¶35    A factual dispute clearly exists as to whether the Employers negated the disclaimer through their outward manifestations. Employers' written policy manual contains no disclaimer, yet it is more detailed than the handbook, listed as controlling, continually updated, referenced in employment contracts, and relied on as authority by HR staff. The handbook at issue, on the other hand, is described as a guide to Employers' policies, and ends its disclaimer with a reference to the actual binding policies of the Employers: "Please note that the terms of the written policies are controlling." That inconsistency alone raises a factual issue as to whether a reasonable person could believe the Employers intended to be bound. Like in *Swanson*, the CIB policy was instituted to quell unrest

17

amongst the staff and prevent employee unionization. Finally, plaintiffs alleged that Employers had honored previous benefits by grandfathering in all employees who were hired before a change was instituted, thus demonstrating they saw themselves as bound by the benefits. In the face of these facts, the handbook disclaimer is hardly persuasive and certainly not dispositive. A factual dispute arises as to whether whether a reasonable person could believe that the Employers intended to be bound, and the disclaimer is only one piece of evidence in that dispute.

¶36 Even if the disclaimer's terms were indisputable, I am unconvinced that it has any sway over the actual terms of employment. It is undisputed that employees entered into an employment agreement, and those agreements incorporated the Employers' policies and procedures as outlined in the manual, not the handbook. In *Marias Healthcare Servs.,* policies and provisions of an employer were directly incorporated in the employment contract by reference. *Marias Healthcare Servs. v. Turenne*, 2001 MT 127, ¶ 17, 305 Mont. 419, 28 P.3d 491. Since the employment contract itself was adequately bargained for, the incorporated policies bound both the employer and employee. *Marias Healthcare*, ¶ 18. That is exactly the case here. The CIB policy was not instituted by the handbook. The CIB policy was part of an undisclaimed company policy which was incorporated directly into the initial employment contract. According to the deposition of the Employers' human resources officer, "the overriding and controlling document of the employment relationship is the Northwest Healthcare official policies and procedures manual," and not the handbook. When parties have apparent intent to incorporate policies into an employment contract, that incorporation is not defeated merely because

18

an employer reserves the right of unilateral amendment.  *Zuelsdorf v. University of Alaska*, 794 P.2d 932, 934-35 (Alaska 1990) (citing *Moore v. Utah Technical College*, 727 P.2d 634, 641-42 (Utah 1986)).

¶37  Finally, although not addressed by today's majority, the employees provided valuable, bargained-for consideration in exchange for the CIB policy.  Any benefit conferred upon the promisor constitutes good consideration for a promise.  Section 28-2-801, MCA.  In *Langager*, we found sufficient consideration when an employee merely received notice of a policy and attended employee meetings to give input about the policy.  ¶ 20.  In *Hernandez*, we found that consideration exists when an employee agrees to a policy at the time of hiring.  ¶¶ 19-20.  Employees here had the CIB policy incorporated into their employment agreement by reference to the Employers' policy manual.  Under the policy, retention increased 100% under the policy and banked sick leave hours increased by over 300%.  Employers received, and expected to receive, good consideration in the form of a direct benefit from the CIB policy.

¶38  The District Court erred by granting summary judgment solely based on the disclaimer.  Evidence in the record raises a factual dispute over whether the Employers manifested their intent to be bound.  I would remand this case for a trier of fact to decide whether a valid contract had been formed.

/S/ MICHAEL E WHEAT

Chief Justice Mike McGrath joins the dissent.

/S/ MIKE McGRATH