FILED

08/30/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0448

DA 15-0448

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 215

CHRIS WAGNER,

      Plaintiff and Appellant,

  v.

MSE TECHNOLOGY APPLICATIONS, INC.
MSE INFRASTRUCTURE SERVICES, INC.,
BUTTE LOCAL DEVELOPMENT CORPORATION,
and SHEA REALTORS, PLLC,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Second Judicial District,
                  In and For the County of Butte-Silver Bow, Cause No. DV-10-298
                  Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Todd A. Stubbs, Stubbs Law, P.C., Manhattan, Montana

        For Appellee MSE:

                Cynthia L. Walker, Emma R. Armstrong, Poore, Roth & Robinson, P.C.,
                Butte, Montana

        For Appellee Butte Local Development Corporation:

                William M. O'Leary, Fleming & O'Leary, PLLP, Butte, Montana

        For Appellee Shea Realtors, PLLC:

                William T. Wagner, Garlington, Lohn & Robinson, PLLP,
                Missoula, Montana

Submitted on Briefs:  June 8, 2016

Decided:  August 30, 2016

Filed:

_____
                          Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Chris Wagner appeals from the District Court's dismissal of his claims at trial pursuant to M. R. Civ. P. 50. We affirm in part and reverse in part.

¶2     We restate the issues on appeal as follows:

*Issue 1: Did the District Court err in dismissing Wagner's intentional interference claims against all defendants and granting them judgment as a matter of law pursuant to M. R. Civ. P. 50(a)?*

*Issue 2: Did the District Court err in dismissing Wagner's claims by granting Shea Realtors summary judgment, and judgment as a matter of law pursuant to M. R. Civ. P. 50(a)?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     In 2009 Wagner sought to buy land in Butte to establish a commercial nursery. He hired Shea Realtors as his agent in purchasing approximately sixty acres of land from the Montana Tech Foundation. Shea became the agent of both Wagner and the Foundation, and in November 2009 Wagner and the Foundation entered a buy-sell agreement under which Wagner would purchase the land. Shea agreed to not engage in negotiations with any other persons or to show the property while the buy-sell agreement was in place. The parties agreed to close the purchase on January 8, 2010.

¶4     Wagner inserted four contingencies into the buy-sell agreement with the Foundation. Those were that he would not be required to bore underneath adjacent railroad tracks for utility installation; that he not be required to use city water for irrigation; that he could subdivide the property; and that his business would meet zoning

3

requirements. There are numerous references in this case to an "easement" condition, but no such condition appears on the face of the buy-sell.

¶5 In December 2009 Wagner hired Gaston Engineering to advise him about the feasibility of subdividing the property and selling the majority of it to others. Gaston identified access as an issue and concluded that the only feasible access was an existing road that was on adjacent property owned by MSE. A Gaston representative spoke to MSE Vice President Tretheway about securing an easement for use of the existing road. Tretheway told Gaston that MSE "would not stand in the way" of Wagner's purchase and would not "throw monkey wrenches" into the process. After additional investigation Gaston advised Wagner that it was feasible for him to subdivide the land into six parcels and to sell five of them.

¶6 MSE requested that Gaston provide more information about Wagner's plans for the land. On January 5, 2010, Gaston responded with a simple "conceptual plan" that showed possible boundaries for dividing the land into six lots. The Foundation agreed to extend the closing date to January 29, 2010. Wagner waited to hear from MSE about an easement and testified that his several attempts to contact MSE about this were unsuccessful. The Foundation agreed to extend the closing date again, to February 15, 2010.

¶7 On January 29, 2010, representatives of the Butte Local Development Corporation (BLDC), the Foundation and MSE met to discuss the property. During the meeting, Mr. Kebe from MSE called Shea to ask whether Wagner would be interested in purchasing a forty-seven-acre parcel owned by MSE adjacent to the land he was trying to buy from the

4

Foundation. At Shea's request Wagner visited the property and then told Shea that he was not interested in it. While the forty-seven-acre parcel contained the existing road that Wagner needed for access to the sixty acres, Wagner never knew this and never obtained an easement from MSE.

¶8 On February 9, 2010, the same persons who were at the January 29 meeting met again to work out an agreement for BLDC to buy the sixty acres from the Foundation and for MSE to provide the necessary easements. On or after February 11, 2010, Shea began working to implement BLDC's purchase of the sixty acres from the Foundation. Wagner knew nothing about the January 29 or February 9 meetings and knew nothing about Shea's involvement. Shea claimed at trial that on or about February 11 Wagner told him he was no longer interested in buying the sixty acres. Wagner denied saying that.

¶9 The February 15, 2010 closing date on the Wagner-Foundation buy-sell agreement passed and Wagner did not close. On February 26, 2010, BLDC purchased the land from the Foundation for the same price contained in the buy-sell with Wagner, and MSE granted easements over its land to BLDC.

¶10 In July 2010 Wagner sued the MSE entities and BLDC, contending that they had improperly interfered with his attempt to purchase the sixty acres from the Foundation. Wagner later amended the complaint to add Shea Realtors as a defendant. The case stagnated and Wagner could not get the District Court to issue a scheduling order or to rule on pending motions. In May 2014 Wagner applied to this Court for a writ of supervisory control. This Court granted relief, ordering the District Court to rule on pending motions and to issue a scheduling order, including a trial date. After the District

5

Court's rulings on motions and two more amendments to the complaint, Wagner's claims were distilled to intentional interference with his prospective economic advantage against all defendants; constructive fraud against Shea and MSE; professional negligence against Shea; breach of contract against Shea; and breach of the covenant of good faith and fair dealing against Shea. Prior to trial the District Court granted partial summary judgment against Wagner by dismissing the professional negligence claim against Shea because Wagner did not have an expert to establish the standard of care for a realtor.

¶11 The case went to jury trial on the remaining claims in June 2015, and Wagner presented his case-in-chief over four days. Witnesses who testified included defendant Shea; Mike Johnson, former president of the Foundation; Jeremy Olson from Gaston Engineering; Mr. Tretheway, former vice president of MSE; Jim Smitham, executive director of BLDC; William Kebe, a member of the board of directors of both MSE and BLDC; and Chris Wagner. At the close of Wagner's case the District Court granted the defendants' M. R. Civ. P. 50 motions for judgment as a matter of law in their favor.

¶12 The District Court concluded that Wagner had not presented sufficient evidence to allow the jury to reasonably find facts that would support a verdict against any of the defendants. The District Court found that Wagner failed to present any evidence that any of the defendants prevented him from purchasing the land from the Foundation. To the contrary the District Court noted Wagner's own testimony that he was free to purchase the Foundation land up to the final closing date (February 15, 2010), and that none of the defendants prohibited him from doing so. The District Court determined that Wagner

6

presented insufficient evidence that any of the defendants intentionally interfered with his prospective economic advantage and that the claims for tortious interference must fail.[1]

¶13 As to the breach of contract claim against Shea, the District Court found that while Shea moved on to become the dual realtor in the BLDC-Foundation transaction for the same land, this did not occur until after Wagner's buy-sell with the Foundation expired. The District Court also concluded that Wagner had failed to present sufficient evidence that he was actually damaged and that the defendants were entitled to judgment as a matter of law on that ground alone.

¶14 Wagner appeals.

## STANDARD OF REVIEW

¶15 This Court reviews a district court's M. R. Civ. P. 50 decision granting or denying judgment de novo, as an issue of law, without special deference to the views of the trial court. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727. A district court should grant judgment as a matter of law only where there is a complete lack of any evidence which would justify submitting an issue to the jury, considering all evidence and any legitimate inferences that might be drawn from it in a light most favorable to the opposing party. *Deonier & Assoc. v. Paul Revere Life Ins. Co.*, 2004 MT 297, ¶ 18, 323 Mont. 387, 101 P.3d 742.

---

[1] The District Court also found that Wagner failed to present sufficient evidence that any defendant misrepresented any fact to him that was material to the land purchase agreement with the Foundation. Absent a misrepresentation of material fact, the District Court determined that Wagner's claims for constructive fraud and negligent misrepresentation failed. Wagner did not appeal that decision.

7

¶16	This Court reviews a district court's decision on summary judgment to determine whether it is correct, using the same criteria under M. R. Civ. P. 56. *Pilgeram v. GreenPoint Mortgage*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. The district court must apply the facts in a way most favorable to the opposing party, and may not grant summary judgment if there are genuine issues of material fact. *Pilgeram*, ¶ 12.

## DISCUSSION

¶17	*Issue 1: Did the District Court err in dismissing Wagner's intentional interference claims against all defendants and granting them judgment as a matter of law pursuant to M. R. Civ. P. 50(a)?*

¶18	Montana Rule of Civil Procedure 50(a) provides:

> (1) If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

A district court should grant judgment as a matter of law under Rule 50(a) only where there is a complete lack of any evidence which would justify submitting an issue to the jury, considering all evidence and any legitimate inferences that might be drawn from it in a light most favorable to the opposing party. *Deonier*, ¶ 18. In this case the defendants invoked Rule 50(a) at the close of Wagner's presentation of his evidence, and the District Court granted judgment against Wagner on all his claims. The issue is whether Wagner presented sufficient evidence of his claims to warrant allowing the jury to determine the case.

8

¶19 Wagner first claims on appeal that all the defendants should have been held liable to him for intentionally interfering with his prospective economic advantage. This Court has recognized the tort of intentional interference with contractual or business relations under the Restatement (Second) of Torts. In *Bolz v. Meyers*, 200 Mont. 286, 292-93, 651 P.2d 606, 609 (1982), we adopted the language of the Restatement describing this tort:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive and burdensome is subject to liability to the other for the pecuniary loss resulting to him.

Restatement (Second) of Torts 766A (1977). This tort may be maintained only against a person who is a stranger to the contractual or business relationship at issue. *Bolz*, 200 Mont. at 293, 651 P.2d at 610. Establishing a prima facie claim requires evidence that the defendant's acts were intentional and willful; that they were calculated to cause damage to the plaintiff or the plaintiff's business; that they were done with the unlawful purpose of causing damage or loss without right or justifiable cause; and that damage resulted. *Bolz*, 200 Mont. at 295, 651 P.2d at 611; *Emmerson v. Walker*, 2010 MT 167, ¶ 23, 357 Mont. 166, 236 P.3d 598.

¶20 In this case the contract or relationship at issue is Wagner's buy-sell agreement with the Foundation for purchase of the sixty acres of land. The issue is whether Wagner presented sufficient proof for a jury to find that any of the defendants prevented him from completing his buy-sell agreement with the Foundation. The evidence presented at trial during Wagner's case-in-chief directly contradicted his premise. As the District Court

9

noted, Wagner himself testified that no party had prevented him from following through with the purchase of the property and that he could have done so up to the final extended closing date of February 15, 2010. Wagner however chose not to complete the purchase, apparently based upon the contingencies that he inserted into the agreement.

¶21 In *Emmerson* this Court upheld a district court's decision that a third party committed the tort of intentional interference with a property exchange agreement. In that case, the third party decided that he needed to frustrate the exchange agreement to obtain property that he desired. The defendant set about to entice one of the parties to repudiate the agreement; offered the party substantially more money to repudiate the agreement; connived to obtain legal advice for the party that would support his position and ultimately filed a legal action seeking to invalidate the agreement. These actions were improper and were sufficient to establish the tort of intentional interference. *Emmerson*, ¶ 25. Nothing in the present case rises to the level of interference seen in *Emmerson*.

¶22 Wagner waited for MSE to come to him with an offer of an easement, while acknowledging in testimony that he had no right to an easement from MSE and had no contract with MSE for an easement. While Wagner's testimony established that he believed that his purchase depended upon getting an easement from MSE, he did very little to seek an easement and did not list obtaining an easement from MSE as a contingency of the buy-sell. Wagner relies heavily upon a statement that MSE made to Gaston that MSE would not stand in the way of the project and would not "monkey wrench" it. While these statements may have encouraged Wagner in his project, they fall

far short of imposing a legal obligation upon MSE to do anything at all, and certainly do not support a claim that MSE had an obligation to take affirmative steps to provide an easement across its property. An agreement to transfer an interest in real property must be in writing, signed by the party to be charged with the obligation. Section 28-2-903(1)(d), MCA; *Hinebauch v. McRae*, 2011 MT 270, ¶ 21, 362 Mont. 358, 264 P.3d 1098.

¶23 The District Court met the high standards required to grant a Rule 50 motion. Based upon the evidence presented at trial, the District Court correctly granted judgment for all defendants on Wagner's claim for intentional interference with the buy-sell contract with the Foundation.

¶24 *Issue 2: Did the District Court err in dismissing Wagner's claims by granting Shea Realtors summary judgment, and judgment as a matter of law pursuant to M. R. Civ. P. 50(a)?*

¶25 Initially Wagner argues that the District Court improperly granted pre-trial summary judgment to defendant Shea on Wagner's claim of professional negligence. Shea moved for summary judgment after Wagner announced that he did not intend to call an expert witness to support his claim of professional negligence. Wagner argued that he did not need to present an expert on the professional negligence claim because a realtor's duties under Montana law are specifically set out in § 37-51-313, MCA. The District Court concluded that while a realtor's duties may be defined by statute, expert testimony is still required to show a breach of those duties because the "practice of real estate professionals, and the manner in which they communicate with and act on behalf of their clients are matters beyond the common experience of ordinary lay jurors."

11

¶26 Wagner's Third Amended Complaint alleged claims against Shea. Wagner alleged that Gary Shea acted as a dual agent for him and for the Foundation in Wagner's attempt to purchase the property, and that Shea simultaneously acted as dual agent for the Foundation and for the BLDC in its attempt to buy the same land. Wagner alleged that after he entered the buy-sell agreement with the Foundation and developed a conceptual plan for the property, Shea changed allegiances to break up the agreement. Finally Wagner alleged that Shea's acting simultaneously as his agent as well as the agent for the BLDC constituted a conflict of interest and that Shea withheld and failed to communicate information about BLDC's plan to purchase the land. Wagner alleged that Shea's actions and his failure to communicate information interfered with his effort to obtain an easement from MSE. Wagner alleged that Shea breached his professional duty to protect his interests in the attempt to purchase the land from the Foundation and that Shea's actions were a direct cause of damages including emotional distress, lost profits, and costs.

¶27 At the time that the District Court granted summary judgment against Wagner on the professional negligence claim, it should have been clear that there were genuine issues of material fact as to the allegations of negligence against Shea. The fundamental factual issues of what Gary Shea knew about the BLDC transaction; of when he knew of that transaction; and of the extent to which he participated in that transaction were all in dispute. Summary judgment is not appropriate if there are genuine issues of material fact concerning the dispute. *Pilgeram,* ¶ 12.

¶28 Further, as a general rule a plaintiff must support a claim of professional negligence with expert testimony as to the professional's duty and as to breach of that duty. *May v. ERA Landmark*, 2000 MT 299, ¶ 66, 302 Mont. 326, 15 P.3d 1179. However, if the determination of professional negligence involves issues "easily within the common experience and knowledge of lay jurors," expert testimony may not be necessary. *Dulaney v. State Farm Fire and Cas.,* 2014 MT 127, ¶ 14, 375 Mont. 117, 324 P.3d 1211; M. R. Evid. 702. As to real estate professionals, Montana law specifies in detail "the duties [that] govern the relationships between brokers and salespersons and buyers or sellers and are intended to *replace the duties of agents as provided elsewhere in state law and replace the common law as applied to these relationships*." Section 37-51-313(1), MCA (emphasis added). Additionally § 37-51-102, MCA, provides extensive and detailed definitions of the various relationships in real estate transactions.

¶29 Shea's duties to Wagner were therefore provided by statute and expert testimony may not have been necessary to establish those duties. *Zuazua v. Tibbles*, 2006 MT 342, ¶ 16, 335 Mont. 181, 150 P.3d 361. However, even if Shea's duties were established by statute, expert testimony may be required to explain to a jury whether or not Shea breached that duty. As this Court has noted, § 37-51-313, MCA, is "not a model of clarity." *Zuazua*, ¶ 14. Nevertheless, in that case we answered questions posed by the United States District Court by analyzing the facts and applying the statute to determine the real estate professional's duties without making reference to any need for expert testimony. *Zuazua*, ¶ 4.

¶30     In summary, when a plaintiff makes a claim of professional negligence against a real estate professional, expert testimony may or may not be required to explain the applicable statutory duty and whether that duty was breached.  It is the responsibility of the district court to analyze the claims and the evidence in each case to determine the extent to which expert testimony may be required.  It was error for the District Court in this case to grant summary judgment to Shea solely because there was a claim of professional negligence.

¶31     Wagner secondly argues on appeal that the District Court's M. R. Civ. P. 50 order was error, asserting that his claims of breach of contract and breach of the covenant of good faith and fair dealing against Shea Realtors should have gone to the jury.  The parties agree that Shea acted as realtor for both Wagner and the Foundation for purposes of buying the property from the Foundation.  Shea and Wagner each signed a document entitled "Relationships/Consents in Real Estate Transactions," dated November 11, 2009.  This is clearly a contract, § 28-2-102, MCA, *Chipman v. Northwest Healthcare Corp.*, 2014 MT 15, ¶ 15, 373 Mont. 360, 317 P.3d 182, that binds Shea to a number of obligations as to Wagner.  Those include the obligation to act "solely in the best interests of the buyer"; the obligation to not represent other buyers without Wagner's written consent; the obligation to "disclose all relevant and material information" about the transaction; and the obligation to "exercise reasonable care, skill, and diligence in pursuing the buyer's objectives."

¶32     Wagner presented sufficient evidence at trial that Shea may have acted contrary to Wagner's interests based upon his involvement in and knowledge of the sale of the

property to BLDC. Wagner presented sufficient evidence at trial that Shea may have acted contrary to Wagner's interests and may have violated his disclosure obligation by holding undisclosed information about a potential sale of the property to BLDC. These were questions that, at the close of Wagner's evidence, were sufficient to be presented to the jury.

¶33 Wagner also contends that Shea violated the covenant of good faith and fair dealing that is implied into "every contract, regardless of type" under Montana law. *Phelps v. Frampton*, 2007 MT 263, ¶ 29, 339 Mont. 330, 170 P.3d 474. This covenant requires that the parties deal with each other in good faith without any attempt to deprive the other party of the benefits of the contract through dishonesty or abuse of discretion. *Phelps*, ¶ 29.

¶34 Wagner's trial testimony was somewhat equivocal in that he appeared to vouch for Shea's honesty and performance, but he still testified that there came a point in their relationship when Shea became unresponsive to his communications. If the jury inferred from the evidence that Shea was actually working on the sale of the property to BLDC while the Foundation's sale to Wagner was still pending, it could have found, based upon evidence presented in Wagner's case-in-chief, that Shea violated the covenant of good faith and fair dealing.

¶35 Wagner next argues that the District Court dismissed his claims based upon an improper finding that Wagner "failed to offer sufficient evidence" that he sustained actual damages. As noted above, the standard to be applied in a Rule 50 motion is whether there was a complete absence of any evidence on damages. It is clear that Wagner

15

presented some evidence of damages. He testified that he paid Gaston Engineering $6,937 for work on the project; that he had to buy another parcel of land at a higher cost per acre; and that he lost between $300,000 and $350,000 because he was unable to purchase the land from the Foundation. This was clearly some evidence of damages and was sufficient to withstand the motions for a judgment as a matter of law. *Casiano v. Greenway*, 2002 MT 93, ¶¶ 32-33, 309 Mont. 358, 47 P.3d 432.

¶36 We emphasize that the sole issue on appeal under M.R. Civ. P. 50 is whether there was a "*complete lack* of any evidence which would justify submitting [Wagner's claims against Shea] to the jury." *Deonier*, ¶ 18 (emphasis added). We are not called upon to determine whether Wagner should ultimately prevail on his claims after a full trial, and we express no view on whether Wagner can or should ultimately prevail in his claims against Shea.

## CONCLUSION

¶37 We affirm the District Court's decision granting judgment as a matter of law to MSE Technology Applications, MSE Infrastructure Services, and Butte Local Development Corporation. We reverse the District Court's decisions granting summary judgment to Shea Realtors and granting Shea's motion for judgment as a matter of law pursuant to M. R. Civ. P. 50.

¶38 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

/S/ MIKE McGRATH

We Concur:


/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE