DA 19-0013

FILED

03/10/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0013

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 58N

WILLIAM R. ODOM,

      Plaintiff, Appellant, and Cross-Appellee,

    v.

THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK,
as Trustee for the Certificate holders of CWMBS, Inc., CHL Mortgage Pass-Through
Trust 2006-20, Mortgage Pass-Through Certificates, Series 2006-20,

      Defendants, Appellees, and Cross-Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-15-345C
Honorable Heidi J. Ulbricht, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Sean S. Frampton, Frampton Purdy Law Firm, Whitefish, Montana

      For Appellees:

          Chandler P. Thompson, Akerman LLP, Salt Lake City, Utah

          Mark D. Etchart, Morgan M. Weber, Browning, Kaleczyc, Berry & Hoven
PC, Missoula, Montana

Submitted on Briefs:  January 2, 2020

Decided:  March 10, 2020

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Plaintiff, Appellant, and Cross-Appellee William R. Odom (Odom) appeals a series of rulings issued by the Montana Eleventh Judicial District Court, Flathead County, along with the accompanying final judgment entered on November 30, 2018. The Bank of New York Mellon fka the Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2006-20, Mortgage Pass-Through Certificates, Series 2006-20 (BNYM) cross-appeals several rulings made by the District Court. We affirm.

¶3 In 2006, Odom borrowed $1,170,000 from First National Bank of Montana to build a home on Little Bitterroot Lake near Marion. Odom signed a Deed of Trust encumbering the house and a portion of his 42 acres of land near the lake. Odom's loan was initially serviced by Countrywide Home Loans, Inc., until Bank of America acquired Countrywide in 2008 and began servicing Odom's loan. After building the house, Odom went through a divorce and learned his home was valued at roughly $600,000 less than the amount he borrowed. While seeking to get a principal reduction on his loan, Odom continued to make payments until September 2012. In September 2012, Odom stopped making payments and

went into default. After defaulting, Odom primarily resided in California, but returned to visit the lake house a few times per year.

¶4     After Odom went into default, the Deed of Trust was assigned to BNYM. In August 2013, Bank of America contracted with Shellpoint Mortgage Services (Shellpoint)[1] to service Odom's loan. Shellpoint informed Odom of its intent to begin foreclosure proceedings and Odom hired counsel. Shellpoint subcontracted with Mortgage Contracting Services (MCS) to inspect Odom's property to confirm it was occupied and secure. MCS hired subcontractors to find local inspectors who would visually inspect the property.

¶5     Shellpoint's inspectors visually inspected the property beginning in August 2013. For several months, the inspectors reported to Shellpoint that the property appeared to be occupied. In September 2014, however, inspector Larry Eslick (Eslick) visited the property and determined it was vacant after performing his inspection. Eslick then informed MCS that the property was vacant. MCS reviewed Eslick's report and found it credible. Neither MCS nor Shellpoint contacted Odom regarding the vacancy report to determine whether the house was indeed vacant or abandoned.

¶6     In October 2014, MCS contractors secured the house. The contractors replaced the front lock, padlocked the garage, winterized the house, and drilled out internal locks on Odom's office and workshop to inspect for possible hazards. The contractors did not change the lock on the back door. In addition, the contractors left a key to the front door

---

[1] At the time known as Resurgent Mortgage Services. For clarity, we refer to the company as Shellpoint throughout.

3

in a coded lockbox and posted a number Odom could call to get the code. In November 2014, Eslick again reported the property as vacant after his inspection. In December 2014, Odom's friend, Robert Mack (Mack), visited the house and discovered the lockbox. Odom's counsel then obtained the code to the lockbox and Mack returned later in December to re-winterize the house.

¶7 In February 2015, Odom visited the house for the first time since it was reported as vacant and found the lockbox unlocked. Odom removed the lockbox and MCS's locks, reinstalled his own locks, and then left after a few hours. Mack returned in late May of 2015 and de-winterized the house. Odom visited the house in mid-June of 2015 and discovered that the house had apparently been burglarized as several items were missing. Odom reported the burglary to police, but the burglary was not solved.

¶8 On April 27, 2015, BNYM filed its Complaint in this matter, seeking to foreclose on the entirety of Odom's property. On July 22, 2015, Odom filed an Answer and Counterclaim, confessing judgment to the portion of land pledged in his Deed of Trust (but not the entirety of his property as sought in BNYM's Complaint) and counterclaiming against BNYM for breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, and constructive fraud. After BNYM amended its complaint, Odom amended his answer and added further counterclaims for declaratory judgment, trespass, conversion, and negligence. The matter ultimately went to a week-long trial in March of 2018. The jury found that BNYM breached the deed of trust, that Odom suffered no damages, and that BNYM was not liable for trespass. Odom appeals and BNYM cross-appeals. Additional relevant facts will be discussed below as necessary.

4

**Odom's Appealed Issues**

¶9 Odom identified six issues for appeal, which we restate as follows: (1) whether the District Court abused its discretion by excluding a portion of the testimony of Jean Knowles; (2) whether the District Court abused its discretion by denying Odom's motion for a continuance; (3) whether the District Court erred by striking Odom's contention number 11 from the Pretrial Order; (4) whether the District Court abused its discretion by precluding Odom from arguing that his loan servicer told him to stop paying his mortgage in order to qualify for a loan program; (5) whether the District Court erred by granting BNYM's motion for judgment as a matter of law regarding Odom's tortious bad faith claim; and (6) whether the District Court abused its discretion by not awarding Odom attorney fees.

¶10 "A district court retains broad discretion in determining whether evidence is relevant and admissible, and we will not overturn its evidentiary determinations absent an abuse of discretion." *Schindler v. United Servs. Auto. Ass'n*, 2011 MT 129, ¶ 29, 360 Mont. 528, 254 P.3d 583 (citation omitted). "A witness may not testify as to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." M. R. Evid. 602.

¶11 Jean Knowles (Knowles) was BNYM's first M. R. Civ. P. 30(b)(6) witness. Odom deposed Knowles in January of 2017. Knowles, a "foreclosure litigation specialist" from Shellpoint's Mortgage Department, was unable to testify intelligently regarding numerous procedures of Shellpoint's Collateral Management Department. After deposing Knowles, Odom filed the Defendant's Motion for Default Judgment or, Alternatively, Second Motion

5

to Compel,[2] arguing that Knowles "lacked knowledge on all subject matters identified" in the Amended Notice of Deposition.

¶12  On November 14, 2017, the District Court issued its Order on William Odom's Motion for Default Judgment or, Alternatively, Second Motion to Compel. The District Court found that Knowles was not adequately educated or prepared for the deposition and granted Odom's motion in part. The District Court denied Odom a default judgment, but granted his motion to compel and ordered BNYM to produce a new, competent Rule 30(b)(6) witness from Shellpoint's Collateral Management Department and to pay Odom's reasonable expenses incurred in making the motion. On January 24, 2018, Odom took the Rule 30(b)(6) deposition of Tracy Hall (Hall), a supervisor in the property preservation department of Shellpoint.

¶13  On February 23, 2018, BNYM filed Bank of New York Mellon's Third Motion in Limine, which sought to exclude the testimony of Knowles for those subject matters which Odom obtained a supplemental deposition pursuant to the District Court's November 14, 2017 Order. BNYM argued that Odom judicially admitted that Knowles was not competent to testify because she lacked personal knowledge, as required by M. R. Evid. 602, of Shellpoint's inspection and property preservation procedures. The District Court granted BNYM's motion in part, holding Knowles was able to testify "concerning Shellpoint's structure and practices, as well as their databases and document storage platform," but that Knowles

---

[2] At the time of this motion, Odom was the defendant in the action. The parties later stipulated before trial to amend the caption to reflect that Odom was the plaintiff in his counterclaims.

is not qualified to testify concerning policies and procedures on preserving or inspecting a borrower's property; abandonment; the frequency of inspecting a borrower's property; hiring inspectors to inspect a borrower's property; the protocol after an inspector determines that a borrower has abandoned his property; hiring a person to enter a borrower's property after it is determined that the home is abandoned; the protocol once an agent enters the home of a borrower after it's been determined that the home is abandoned; drilling locks within the home; and also the history of the inspections and preservation of Odom's property, including communications regarding those inspections, the effort Shellpoint or MCS took to check the inspectors' background and ensure they were trustworthy.

The District Court further ordered Odom to amend his deposition designation for Knowles to comply with the court's ruling.

¶14 Odom argues BNYM is bound by the testimony of Knowles, as BNYM designated her as its original Rule 30(b)(6) witness before being required to produce Hall after Odom's Motion for Default or, Alternatively, Second Motion to Compel was partially granted by the District Court. "No party is bound by the testimony of any witness." M. R. Evid. 607(b). While Odom puts forth federal caselaw in support of his argument that Knowles's testimony was binding on BNYM, Rule 607 of the Federal Rules of Evidence is not identical to Montana's Rule 607, and specifically does not contain Montana's language that "[n]o party is bound by the testimony of any witness." *See* Fed. R. Evid. 607. While BNYM does have a duty to educate its Rule 30(b)(6) witness, and it is undisputed that Knowles was not prepared or knowledgeable at her deposition, Odom was able to obtain sanctions against BNYM for its conduct in designating Knowles. The District Court ordered BNYM to produce a new, competent Rule 30(b)(6) witness for Odom to depose and to pay Odom's reasonable expenses. The District Court also specifically denied Odom's request for a default judgment.

7

¶15 It is clear from the record Knowles lacked personal knowledge of most of the issues raised in Odom's Amended Notice of Deposition and was therefore not qualified to testify pursuant to M. R. Evid. 602. By claiming BNYM is bound to the testimony of an incompetent witness who would not otherwise be allowed to testify, Odom is essentially arguing the District Court should have imposed sanctions he did not request. Odom could have requested in his Motion for Default or, Alternatively, Second Motion to Compel that certain facts testified to by Knowles "be taken as established for the purposes of the action" as a sanction pursuant to M. R. Civ. P. 37(b)(2)(A)(i). He did not. Odom instead asked for a default, did not get it, and now desires a do-over to which he is not entitled. The District Court correctly found Knowles was not qualified to testify pursuant to M. R. Evid. 602 and did not abuse its discretion by partially excluding her testimony.

¶16 We review a district court's denial of a motion to continue for abuse of discretion. *In re Marriage of Eslick*, 2013 MT 53, ¶ 10, 369 Mont. 187, 304 P.3d 372 (citations omitted). Any motion for a continuance is within the sound discretion of the district court and we will not overrule the court's decision to deny a request for a continuance unless there is an affirmative showing a party suffered prejudice. *Eslick*, ¶ 10. A district court abuses its discretion when it acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561 (citation omitted).

¶17 Odom moved to continue the trial during the final pretrial conference, after the District Court issued its order excluding a portion of Knowles's testimony. Odom claimed he needed a continuance to depose Hall—who he had already deposed—and ask her

8

questions he did not ask during the first deposition. While Odom argues he strategically did not ask Hall questions due to concessions by Knowles, the District Court had already specifically denied his request for a default judgment sanction and ordered BNYM to produce a new, competent Rule 30(b)(6) witness. Odom had every opportunity to ask Hall questions at her original deposition, but made the tactical choice to limit his own questioning. Under these circumstances, we cannot find the District Court abused its discretion by denying Odom's motion for a continuance.

¶18 We review matters of trial administration for abuse of discretion. *Weaver v. State*, 2013 MT 247, ¶ 32, 371 Mont. 476, 310 P.3d 495 (citations omitted).

¶19 Discovery between the parties was contentious, particularly prior to substitution of counsel by BNYM. As discussed above, BNYM was sanctioned for providing an incompetent Rule 30(b)(6) witness. BNYM was also sanctioned for providing incomplete and inaccurate discovery responses. In the Pretrial Order, Odom listed the following as his contention number 11: "BNY[M] has denied Odom the opportunity to discover the truth about the events in this case." The District Court struck this contention from the Pretrial Order on February 26, 2018.

¶20 Odom argues the District Court striking his contention number 11 from the Pretrial Order prohibited him from introducing BNYM's discovery responses. This overstates the District Court's ruling. Odom could certainly use BNYM's discovery responses to impeach witnesses or otherwise prove his case, he was simply prohibited from arguing BNYM obstructed his search for the truth. The District Court rightly held such an argument would be unduly prejudicial, confuse the issues, and mislead the jury pursuant to M. R.

9

Evid. 403. Odom cites to *Palmer by Diacon v. Farmers Ins. Exch.*, 261 Mont. 91, 123, 861 P.2d 895, 915 (1993), for the contention that BNYM's post-filing conduct may be relevant and admissible. *Palmer by Diacon* does not provide the support Odom claims, as it is unclear how Odom could meet the bar of showing BNYM's behavior in discovery two years after Odom's house was secured by contractors is both somehow relevant to the actions of those contractors and would not be unduly prejudicial pursuant to M. R. Evid. 403. Even in *Palmer by Diacon*, we held that, after analyzing the insurer's post-filing conduct, "the prejudicial nature far outweighs any relevance of the conduct." *Palmer by Diacon*, 261 Mont. at 124, 861 P.2d at 916. The same result is appropriate here. The District Court did not abuse its discretion by striking Odom's contention number 11 from the Pretrial Order.

¶21 M. R. Civ. P. 59(e) relief is available in the discretion of the court only in extraordinary circumstances. *Folsom v. Mont. Pub. Emps. Ass'n*, 2017 MT 204, ¶ 59, 388 Mont. 307, 400 P.3d 706. Rule 59 relief is available under the following grounds: "(1) to correct manifest errors of law or fact upon which the judgment was based; (2) to raise newly discovered or previously unavailable evidence; (3) to prevent manifest injustice resulting from, among other things, serious misconduct of counsel; or (4) to bring to the court's attention an intervening change in controlling law." *Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 75, 304 Mont. 356, 22 P.3d 631 (citing *Nelson v. Driscoll*, 285 Mont. 355, 360, 948 P.2d 256, 259 (1997)). We review the denial of a motion for Rule 59(e) relief for an abuse of discretion. *Folsom*, ¶ 59.

¶22 In a related matter, Odom also appeals the District Court striking a contention he made in an earlier Pretrial Order, in which he sought to argue BNYM induced him to default on his mortgage. Odom sought to list as a contention that, "Odom entered default at the suggestion of the loan servicer to qualify for a possible loan restructure. It was always Odom's intent to keep his home and he communicated this to Shellpoint. Shellpoint led Odom to believe that he would qualify for a loan restructure but ultimately denied it." At the January 24, 2018 pretrial conference, BNYM orally moved to preclude Odom from including this contention in the Final Pretrial Order. The District Court held oral argument on the matter and ultimately ruled that, "Odom will be precluded from allegations and evidence in regards to Shellpoint and Odom discussing loan modification or being misled." The District Court ruled Odom did not affirmatively plead an avoidance affirmative defense pursuant to M. R. Civ. P. 8(c) and his Answer and Counterclaim did not provide notice of the theory to BNYM and it would therefore be "unfair to inject it into the litigation approximately one month before trial." Odom moved to amend the District Court's Order pursuant to M. R. Civ. P. 59(e), which was denied.

¶23 M. R. Civ. P. 9(b) requires a party alleging fraud to plead the circumstances constituting fraud with sufficient particularity. *Fossen v. Fossen*, 2013 MT 299, ¶ 9, 372 Mont. 175, 311 P.3d 743. "A sufficiently pled fraud complaint should allege not only that a representation was made, but also the time and place of the representation." *Fossen*, ¶ 9 (citing *C. Haydon Ltd. v. Mont. Mining Props.*, 262 Mont. 321, 325, 864 P.2d 1253, 1256 (1993)). While the District Court, when issuing its initial oral ruling on the matter, incorrectly cited to M. R. Civ. P. 8(c) as a portion of the reason it was precluding Odom

11

from arguing he had been induced to default by Shellpoint, it ultimately reached the correct result. The District Court correctly found Odom did not provide notice of his theory until just over a month before trial was set to begin. Litigation lasted for nearly three years before trial began, and Odom never claimed his servicer had somehow induced him to default to qualify for a loan modification program. Odom did argue he defaulted due to "marital dissolution and other non-material reasons" when he sought summary judgment and later testified he defaulted because he wanted to get a principal reduction, but Shellpoint was not responding to his requests and he wanted to force the issue. Odom's constructive fraud claim was not sufficiently pled to put BNYM on notice of his inducement to default theory and it was not presented sufficiently before trial. The District Court did not abuse its discretion by striking Odom's contention that he entered default at the suggestion of his loan servicer or by denying his M. R. Civ. P. 59(e) motion to alter or amend.

¶24 We review a district court's M. R. Civ. P. 50 decision granting or denying a motion for judgment as a matter of law de novo. *Wagner v. MSE Tech. Applications, Inc.*, 2016 MT 215, ¶ 15, 384 Mont. 436, 383 P.3d 727 (citing *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727). "A district court should grant judgment as a matter of law only when there is a complete lack of any evidence which would justify submitting an issue to the jury, considering all evidence and any legitimate inferences that might be drawn from it in a light most favorable to the opposing party." *Howard v. Replogle*, 2019 MT 244, ¶ 12, 397 Mont. 379, 450 P.3d 866 (citing *Wagner*, ¶ 15).

¶25 At the end of Odom's case, BNYM moved for judgment as a matter of law on all claims pursuant to M. R. Civ. P. 50(a). The District Court granted BNYM's motion regarding tortious bad faith and constructive fraud but denied the remainder of BNYM's motion. Odom appeals the District Court's ruling regarding his tortious bad faith claim.

¶26 The tort of bad faith may be "available in contracts involving special relationships which are not otherwise controlled by specific statutory provisions." *Story v. City of Bozeman*, 242 Mont. 436, 451, 791 P.2d 767, 776 (1990) (*Story I*).[3] In *Story I*, we adopted a five-part test to determine whether a special relationship exists:

> (1) the contract must be such that the parties are in inherently unequal bargaining positions; [and] (2) the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of mind, security, future protection; [and] (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party 'whole'; [and] (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

---

[3] In the following instances, this Court has erroneously stated that *Story I* was overruled in part by *Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 54, 318 Mont. 103, 79 P.3d 250: *Chipman v. Northwest Healthcare Corp.*, 2014 MT 15, ¶ 29, 373 Mont. 360, 317 P.3d 182; *Morrow v. Bank of Am., N.A.*, 2014 MT 117, ¶ 31, 375 Mont. 38, 324 P.3d 1167; *Estate of Gleason v. Cent. United Life Ins. Co.*, 2015 MT 140, ¶ 114, 379 Mont. 219, 350 P.3d 349 (McKinnon, J., dissenting); *Farmers Ins. Exch. v. Goldan*, 2016 MT 196, ¶ 54, 384 Mont. 301, 378 P.3d 1163 (Baker, J., dissenting); *Bridger Del Sol, Inc. v. VincentView, LLC*, 2017 MT 293, ¶ 10, 389 Mont. 415, 406 P.3d 460; *Puryer v. HSBC Bank USA, N.A.*, 2018 MT 124, ¶ 23, 391 Mont. 361, 419 P.3d 105, 112; and *Draggin' Y Cattle Co. v. Junkermier, Clark, Campanella, Stevens, P.C.*, 2019 MT 97, ¶ 47, 395 Mont. 316, 439 P.3d 935 (Sandefur, J., concurring). *Arrowhead Sch. Dist. No. 75* overruled, in part, *Story v. City of Bozeman*, 259 Mont. 207, 856 P.2d 202 (1993) (*Story II*) "to the extent it placed the burden on the nonbreaching party to prove a liquidated damages clause is enforceable." *Arrowhead Sch. Dist. No. 75*, ¶ 54. *Arrowhead Sch. Dist. No. 75* did not overrule *Story I* in any way, and we regret any confusion our previous misstatements on this matter may have caused.

*Story I*, 242 Mont. at 451, 791 P.2d at 776 (quoting *Wallis v. Superior Court*, 207 Cal. Rptr. 123, 129 (Cal. Ct. App. 1984)).

¶27    The District Court held Odom did not demonstrate a special relationship, and therefore BNYM could not be liable to him for tortious bad faith.  Odom asserts the District Court erred in its analysis of *Story I* when it found no special relationship existed because BNYM did not enter the contract with a non-profit motivation, arguing that the motivation for entering the contract must be viewed from his perspective, not BNYM's.  Regardless of the District Court's stated reasoning, our de novo review of the record mandates we reach the same result.

¶28    "If substantial evidence is not presented in support of each and all of the essential elements, the court shall direct there is no special relationship."  *Story I*, 242 Mont. at 451, 791 P.2d at 776.  In this case, Odom did not meet his burden to present substantial evidence in support of each element of the *Story I* special relationship test.  Quite simply, there is no evidence in the record to support any conclusion beyond the existence of a simple debtor-creditor relationship between Odom and BNYM.  Odom borrowed $1,170,000 to build a house and BNYM was eventually assigned the Deed of Trust.  There is nothing in the record to show Odom borrowed $1.17 million to secure his peace of mind or that he was somehow especially vulnerable.  Therefore, he cannot meet the burden of demonstrating the existence of each of the elements required for a court to find a special relationship.  *Story I*, 242 Mont. at 451, 791 P.2d at 776.  The District Court correctly granted BNYM's motion for judgment on Odom's tortious bad faith claim.

14

¶29 "If legal authority exists to award attorney fees, we review a district court's decision to grant or deny fees for abuse of discretion." *Kenyon-Noble Lumber Co. v. Dependant Founds., Inc.*, 2018 MT 308, ¶ 11, 393 Mont. 518, 432 P.3d 133 (citing *James Talcott Constr. Inc. v. P&D Land Enters.*, 2006 MT 188, ¶ 27, 333 Mont. 107, 141 P.3d 1200).

¶30 Odom asserts he is entitled to attorney fees because he won on the issue of the amount of property on which BNYM was allowed to foreclose when the District Court issued its November 14, 2017 Order on William Odom's Second Motion for Partial Summary Judgment Re: Foreclosure. The District Court's order granted Odom's motion with respect to the Deed of Trust's property description but denied Odom's request for attorney fees. In his motion, Odom sought attorney fees based on BNYM's breach of the Deed of Trust. The District Court denied Odom's request because the "motion requested summary judgment concerning the property description and did not concern whether BNYM breached the Deed of Trust." The District Court correctly noted Odom's summary judgment motion did not concern whether BNYM breached the Deed of Trust, and therefore did not abuse its discretion by denying Odom attorney fees when it granted Odom's partial summary judgment motion.

¶31 After trial, Odom again sought attorney fees. While Odom does not appeal the District Court's denial of his post-trial motion for fees, he asserts entitlement to reciprocal fees under § 28-3-704, MCA, for "winning" on the amount of property BNYM could foreclose upon while ignoring all the other claims in the case. This argument is unavailing as both parties won on some issues and lost on others. The District Court correctly found

15

there was no single "prevailing party" and therefore no basis to award fees. The District Court did not abuse its discretion by denying Odom's request for attorney fees.

**BNYM's Cross-Appealed Issues**

¶32 BNYM cross-appealed three issues, which we restate as follows: (1) whether the District Court erred by not granting BNYM judgment as a matter of law; (2) whether the District Court erred by not granting BNYM's requested jury instruction relating to the implied covenant of good faith and fair dealing; and (3) whether BNYM waived arguments about the scope of the contractors' agency by failing to plead scope of agency as an affirmative defense. BNYM, in its briefing, stated it waived issues 2 and 3 if this Court did not grant Odom a new trial. As we did not grant Odom a new trial, we address only BNYM's first cross-appealed issue.

¶33 We review a district court's M. R. Civ. P. 50 decision denying a motion for judgment as a matter of law de novo. *Wagner*, ¶ 15.

¶34 As noted above, at the close of Odom's case, the District Court denied BNYM's Rule 50(a) motion for judgment as a matter of law with regard to all claims other than the tortious bad faith and constructive fraud claims. BNYM did not file a motion for judgment at the close of all evidence, pursuant to Rule 50(a), or renew its motion for judgment after trial, pursuant to Rule 50(b). While BNYM urges us to review the matter under alternative grounds—presumably because its original trial counsel failed to file a motion for summary judgment which would be reviewable[4]—it cannot appeal the denial of its pre-verdict Rule

---

[4] BNYM's current counsel substituted for its original counsel after the deadline to file motions for summary judgment had passed and attempted to obtain leave to file a motion for summary judgment, which the District Court denied.

50(a) motion for judgment. *Blue Ridge Homes, Inc. v. Thein*, 2008 MT 264, ¶ 40, 345 Mont. 125, 191 P.3d 374 (citing *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405-06, 126 S. Ct. 980, 988-89 (2006)). Because BNYM did not renew its pre-verdict motion for judgment as a matter of law pursuant to Rule 50(b), we decline to address its cross-appeal of the District Court's denial of the motion. *Blue Ridge Homes*, ¶ 40.

¶35    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶36    Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE